UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

KRYSTAL R.,

                              Plaintiff,

v.                                                          8:20-CV-0513
                                                                 (ML)

COMMISSIONER OF SOCIAL SECURITY,

                              Defendant.
_____

APPEARANCES:                          OF COUNSEL:

SCHNEIDER & PALCSIK              MARK A. SCHNEIDER, ESQ
  *Attorneys for Plaintiff*                   .
57 Court Street
Plattsburgh, New York 12901

U.S. SOCIAL SECURITY ADMIN.       CANDACE H. LAWRENCE, ESQ.
  *Counsel for Defendant*
J.F.K. Federal Building, Room 625
15 New Sudbury Street
Boston, Massachusetts 02203

**MIROSLAV LOVRIC**, United States Magistrate Judge


## MEMORANDUM-DECISION AND ORDER

        Plaintiff Krystal R. ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g) seeking

judicial review of a final decision of the Commissioner of Social Security ("Defendant" or

"Commissioner") denying her application for Supplemental Security Income ("SSI").  (Dkt. No.

1.)  This case has proceeded in accordance with General Order 18 of this Court which sets forth

the procedures to be followed when appealing a denial of Social Security benefits.  Currently

before the Court are Plaintiff's motion for judgment on the pleadings and Defendant's motion for

judgment on the pleadings. (Dkt. Nos. 16, 19).  For the reasons set forth below, Defendant's

motion for judgment on the pleadings is granted and the Commissioner's decision is affirmed.

## I.    PROCEDURAL HISTORY

On October 4, 2016, Plaintiff filed an application for SSI, alleging that she became

disabled on May 1, 2011 due to a back injury, depression, and anxiety. (Administrative

Transcript ("T.") 167-173.)  Her application was denied initially on January 26, 2017. (T. 90-

111.)  Plaintiff requested a hearing and appeared without representation before Administrative

Law Judge ("ALJ") Brian LeCours on October 29, 2018. (T. 35-44.)  The ALJ advised Plaintiff

of her right to counsel and granted Plaintiff's request for an adjournment to allow her to seek

legal representation. (T. 38.)

Plaintiff did not obtain legal representation but appeared at her rescheduled hearing on

February 8, 2019. (T. 46-89.)  Plaintiff's mother was also present, and the ALJ permitted her to

remain in the hearing room as "moral support."  (T. 48.)  During the hearing, the ALJ heard

testimony from Plaintiff and from vocational expert ("VE") Margaret Heck.  (T. 54-87.)  The

ALJ issued an unfavorable decision on March 8, 2019.  (T. 7-29.)  This became the

Commissioner's final decision when the Appeals Council denied Plaintiff's request for review on

April 17, 2020.  (T. 1-6.)

## II.    GENERALLY APPLICABLE LAW

### A.    Scope of Review

In reviewing a final decision of the Commissioner, a court must determine whether the

correct legal standards were applied and whether substantial evidence supports the decision.

*Featherly v. Astrue*, 793 F. Supp. 2d 627, 630 (W.D.N.Y. 2011) (citations omitted); *Rosado v.

Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citing *Johnson v. Bowen*, 817 F.2d 983, 985

(2d Cir. 1987)).  A reviewing court may not affirm the ALJ's decision if it reasonably doubts whether the proper legal standards were applied, even if the decision appears to be supported by substantial evidence.  *Johnson*, 817 F.2d at 986.

A court's factual review of the Commissioner's final decision is limited to the determination of whether there is substantial evidence in the record to support the decision.  42 U.S.C. § 405(g) (2015); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991).  To facilitate the court's review, an ALJ must set forth the crucial factors justifying his findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision. *Roat v. Barnhart*, 717 F. Supp. 2d 241, 248 (N.D.N.Y. 2010); *see also Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984).  "Substantial evidence has been defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (citations omitted).  It must be "more than a mere scintilla" of evidence scattered throughout the administrative record.  *Featherly*, 793 F. Supp. 2d at 630; *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams*, 859 F.2d at 258 (citations omitted).  Where substantial evidence supports the ALJ's findings they must be sustained "even where substantial evidence may support the plaintiff's positions and despite that the court's independent analysis of the evidence may differ from the [ALJ's]." *Rosado*, 805 F. Supp. at 153.  In other words, a reviewing court cannot substitute its interpretation of the administrative record for that of the Commissioner if

3

the record contains substantial support for the ALJ's decision.  *Rutherford v. Schweiker*, 685

F.2d 60, 62 (2d Cir. 1982).

B.     **Standard for Benefits**[1]

To be considered disabled, a plaintiff-claimant seeking benefits must establish that he or

she is "unable to engage in any substantial gainful activity by reason of any medically

determinable physical or mental impairment which can be expected to result in death or which

has lasted or can be expected to last for a continuous period of not less than twelve months."  42

U.S.C. § 1382c(a)(3)(A) (2015).  In addition, the plaintiff-claimant's

> physical or mental impairment or impairments [must be] of such
> severity that he is not only unable to do his previous work but
> cannot, considering his age, education, and work experience,
> engage in any other kind of substantial gainful work which exists
> in the national economy, regardless of whether such work exists in
> the immediate area in which he lives, or whether a specific job
> vacancy exists for him, or whether he would be hired if he applied
> for work.

*Id*. § 1382c(a)(3)(B).

Acting pursuant to its statutory rulemaking authority (42 U.S.C. § 405(a)), the Social

Security Administration ("SSA") promulgated regulations establishing a five-step sequential

evaluation process to determine disability.  20 C.F.R. § 416.920(a)(4) (2015).  Under that five-

step sequential evaluation process, the decision-maker determines:

> (1) whether the claimant is currently engaged in substantial gainful
> activity; (2) whether the claimant has a severe impairment or
> combination of impairments;  (3) whether the impairment meets or
> equals the severity of the specified impairments in the Listing of
> Impairments;  (4) based on a "residual functional capacity"

---

[1]  The requirements for establishing disability under Title XVI, 42 U.S.C. § 1382c(a)(3)
and Title II, 42 U.S.C. § 423(d), are identical, so that "decisions under these sections are cited
interchangeably."  *Donato v. Sec'y of Health and Human Servs.*, 721 F.2d 414, 418 n.3 (2d Cir.
1983) (citation omitted).

> assessment, whether the claimant can perform any of his or her
> past relevant work despite the impairment; and (5) whether there
> are significant numbers of jobs in the national economy that the
> claimant can perform given the claimant's residual functional
> capacity, age, education, and work experience.

*McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014).  "If at any step a finding of disability or

non-disability can be made, the SSA will not review the claim further."  *Barnhart v. Thomas*,

540 U.S. 20, 24 (2003).

## III.   **FACTS**

As of the date of the ALJ's decision, Plaintiff was 27 years old. (T. 59.)  She was a high

school graduate who attended one semester of college. (T. 59, 299.)  At her February 6, 2019

hearing, Plaintiff testified that she resides with her two children, who were three years old and

ten months old. (T. 58-59.)  Her father and other family members visited regularly to assist with

childcare and household tasks. (T. 59.)  Plaintiff had a limited employment history that included

short-term positions as a hotel housekeeper and an aide at a retirement home. (T. 60-61, 211.)

Plaintiff injured her back in a car accident when she was sixteen years old and was

treated with opiate pain medication. (T. 1059.)  She aggravated her back injury in 2010 while

working in the retirement home and again in a January 2017 motor vehicle accident. (T. 1207,

1277.)  She underwent back surgery in 2016, but reported increased sciatica pain following the

procedure. (T. 81, 803, 1253.)  Plaintiff testified that her physical impairments prevented her

from sitting or standing in one position for an extended period and made it difficult for her to lift

her youngest child. (T. 58-59, 62, 77-78.)

Over the course of treatment for her back pain, Plaintiff developed a dependence on

opiates, and began methadone treatment and outpatient drug rehabilitation in 2014. (T. 288,

1207.)  She testified that she was clean and sober for the past three years. (T. 63.) Her treatment

status reduced her options for pain medication. (T. 67.)  She also received counseling for anxiety, and reported panic attacks in large crowds or when she felt like she was "being put on the spot." (T. 72-73, 1248-1249.)

The record includes Plaintiff's treatment history.  Rather than summarizing the records at the outset, I will refer to the pertinent records during my discussion of Plaintiff's arguments.

## IV.   <u>THE ALJ'S DECISION</u>

After finding that Plaintiff did not engage in substantial gainful activity ("SGA") after her application date of October 4, 2016, the ALJ found that Plaintiff had the following severe impairments: "degenerative disc disease, status post 2016 lumbar surgery, asthma, depressive disorder, anxiety and substance addiction disorders."  (T. 12.)   At step three of the evaluation, the ALJ found that Plaintiff's impairments either singly or in combination did not meet or medically equal the severity of a listed impairment. (T. 12-14.)  In reaching this conclusion, the ALJ reviewed Listing 1.00 (musculoskeletal disorders), Listing 3.00 (respiratory disorders), and Listing 12.00 (mental disorders). (*Id*.)

Next, the ALJ found that Plaintiff could perform less than the full range of sedentary work. (T. 14.)  Specifically, the ALJ found that Plaintiff could occasionally operate pedal controls; could occasionally balance, stoop, kneel, crouch and climb ramps and stairs, but is never able to crawl or to climb ladders, ropes, and scaffolds; must avoid more than occasional exposure to pulmonary irritants such as strong fumes, odors, dust, and gases; and was limited to work consisting of unskilled tasks that required little or no judgment to do simple duties that can be learned on the job in a short period of time. (*Id*.)

In making the RFC determination, the ALJ stated that he considered all of Plaintiff's symptoms, and the extent to which those symptoms could "reasonably be accepted as consistent

6

with the objective medical evidence and other evidence, based on the requirements of 20 C.F.R.

20 C.F.R. 416.929" and Social Security Ruling ("SSR") 16-3p.  (*Id*.)  The ALJ further stated that

he considered opinion evidence and prior administrative medical findings in accordance with 20

C.F.R. § 416.927.  (*Id*.)  The ALJ also considered Plaintiff's subjective complaints regarding

pain, symptoms, and functional limitations raised during the hearing and in the overall

administrative record. (T. 14-17).

At step four, the ALJ determined that Plaintiff had no past relevant work. (T. 23.)

However, based upon the RFC and the testimony of VE Heck, the ALJ determined that there

were jobs existing in significant numbers in the national economy that Plaintiff could perform.

(T. 23-24.)  Accordingly, the ALJ found that Plaintiff was not disabled from the application date

through the date of his decision.  (T. 24-25).

## V.     <u>ISSUES IN CONTENTION</u>

Plaintiff raises the following arguments in support of her position that the ALJ's decision

is not supported by substantial evidence:

1.     The ALJ failed to fully develop the record and denied Plaintiff a full and fair
       hearing. (Dkt. No. 16 at 21-28.)

2.     The ALJ erred by not finding that Plaintiff's spinal impairment met or medically
       equaled Listing 1.04 (Dkt. No. 16 at 19-20.)

3.     The ALJ erred in his assessment of the medical and testimonial evidence.  (Dkt.
       No. 16 at 24-33.)

Defendant contends that the ALJ's decision is supported by substantial evidence.  (Dkt. No. 19 at

13-33).  For the following reasons, this Court agrees with Defendant and will dismiss the

complaint.

## VI.   DEVELOPMENT OF RECORD/FULL AND FAIR HEARING

### A.   Legal Standards

"A claim of entitlement to social security benefits triggers Due Process Clause protections." *Pokluda v. Colvin*, No. 13-CV-0335, 2014 WL 1679801, at *3 (N.D.N.Y. Apr. 28, 2014) (citing *Mathews v. Eldridge*, 424 U.S. 319, 332-33 (1976)).  Generally, due process requires only that the proceedings in the context of an administrative social security hearing be "full and fair." *Id*. (citing *Richardson*, 402 U.S. at 401-02; *Echevarria v. Sec'y of Health & Human Servs*., 685 F.2d 751, 755 (2d Cir. 1982)).

#### 1.   Development of Record

An ALJ has an affirmative obligation to develop a claimant's complete and accurate medical record.  "[T]he Commissioner of Social Security ... shall develop a complete medical history of at least the preceding twelve months for any case in which a determination is made that the individual is not under a disability." 42 U.S.C. § 423(d)(5)(B); *see also Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996) (citation omitted) (noting that a "hearing on disability benefits is a non-adversarial proceeding," and as such, "the ALJ generally has an affirmative obligation to develop the administrative record").  An ALJ's failure to comply with this mandate is legal error. *Rose v. Comm'r of Soc. Sec*., 202 F. Supp. 3d 231, 239 (E.D.N.Y. 2016).  However, the ALJ's duty to develop the record is not unlimited and is discharged when the ALJ "possesses [the claimant's] complete medical history" and there are no "obvious gaps or inconsistencies" in the record. *Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999) (internal quotation marks omitted).

The duty to develop the record is "heightened" when a claimant "waives [her] right to counsel and proceeds *pro se*." *Moran v. Astrue*, 569 F.3d 108, 113 (2d Cir. 2009) (internal quotation marks omitted).  This is because the ALJ "must adequately protect" the rights of a *pro*

*se* claimant.  *Id*.  The ALJ's heightened duty requires him to "scrupulously and conscientiously

probe into, inquire of, and explore for all the relevant facts."  *Echevarria v. Sec'y of Health &*

*Human Servs.*, 685 F.2d 751, 755 (2d Cir. 1982); *see also Morris v. Berryhill*, 721 F. App'x 25,

27 (2d Cir. 2018) (summary order) ("When a disability benefits claimant appears *pro se*, the ALJ

must 'ensur[e] that all of the relevant facts are sufficiently developed and considered.'") (quoting

*Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990)).  On appeal, the district court must undertake a

"searching investigation of the record" to ensure that the rights of the *pro se* claimant were

protected.  *Cruz*, 912 F.2d at 11.  Moreover, where a claimant is *pro se* and alleging mental

impairments, courts have concluded that the ALJ bears a "doubly heightened" duty to develop

the record.  *Estrella o/b/o M.R.E. v. Berryhill*, No. 15 CV 6966 (CS)(LMS), 2017 WL 2693722,

at *21 (S.D.N.Y. June 22, 2017) (citing *Corporan v. Comm'r of Soc. Sec.*, No. 12-Civ-6704

(JPO)(SN), 2015 WL 321832, at *6 n.7 (S.D.N.Y. Jan. 23, 2015)).

### 2.    Calling Witnesses

The general rule in Social Security proceedings is that "the presentation and questioning

of witnesses [is] permissible, not requisite."  *Infante v. Apfel*, 2001 WL 536930, at *9 n.7

(S.D.N.Y. May 21, 2001).  There are circumstances when an ALJ's duty to develop the record

requires questioning witnesses.  *Lopez v. Sec'y of Health & Human Servs.*, 728 F.2d 148, 150-51

(2d Cir. 1984) ("We have remanded cases when it appears that the ALJ has failed to consider

relevant and probative evidence which is available to him.") (citing *Cutler v. Weinberger*, 516

F.2d 1282, 1286 (2d Cir. 1975)).

In *Lopez*, for example, the Second Circuit found that an ALJ erred in refusing to hear the

testimony of a claimant's friend where the claimant spoke little English.  *Id*. at 150. The Second

Circuit reasoned that the friend—who the claimant described as "help[ing] [her] with everything

that [she] cannot do for [herself]"—"could have provided effective testimony about [the claimant's] ability to function on a daily basis." *Id*.; *see also Regennitter v. Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294, 1298 (9th Cir. 1999) ("[T]estimony from lay witnesses who see the claimant every day is of particular value."); *Collins v. Comm'r of Soc. Sec.*, 19-CV-1350 (LJV), 2020 WL 6488744, at *2-3 (W.D.N.Y. November 4, 2020) (finding that ALJ erred by denying request for claimant's partner to testify when plaintiff suffered from memory issues that prevented her from providing detailed testimony about her medical history).

### 3.   Right to Counsel

Although a claimant does not have a constitutional right to counsel at a Social Security disability hearing, she does have a statutory and regulatory right to be represented should she choose to obtain counsel.  42 U.S.C. § 406; 20 C.F.R. § 416.1505.  The applicable statute and regulations state that, when notifying a claimant of an adverse determination, the Commissioner of Social Security must "notify [the] claimant in writing" of (1) her "options for obtaining [an] attorney[ ] to represent [her]" at her hearing, and (2) "the availability ... of ... organizations which provide legal services free of charge" to "qualifying claimants."  42 U.S.C. §§ 406(c), 1383(d)(2)(D); *see also* 20 C.F.R. § 416.1506; *see also Drake v. Comm'r of Soc. Sec.*, No. 8:08-CV-1007, 2010 WL 11526780, at *4-5 (N.D.N.Y. Dec. 20, 2010).  If properly informed of this right, a claimant may waive it.  *Lamay v. Comm'r of Soc. Sec.*, 562 F.3d 503, 507-508 (2d Cir. 2009).

### B.   Application

### 1.   Development of Record

In this case, the ALJ met his heightened obligation to develop the record on behalf of the Plaintiff, who was unrepresented at the time of the hearing.  At the commencement of the

February 6, 2019 hearing, the ALJ inquired whether Plaintiff had an opportunity to review the

administrative record in advance. (T. 51.)  Upon learning that Plaintiff may not have received the

most recently updated version of the record and had only reviewed an earlier version, the ALJ

ordered that an additional copy be sent to Plaintiff's address, and gave her one week from receipt

to raise any objections or concerns. (T. 51-52.)   The ALJ then summarized the full contents of

the administrative record, and explained again the process for objecting to the record. (T. 52-54.)

Following the ALJ's summary, Plaintiff reported that she had seen her pain management

specialist, Dr. Thierry Bonnabesse, within the last month. (T. 54-55.)  The ALJ remarked that

SSA had requested records from Dr. Bonnabesse in October or November 2018, and the most

recent notes from the physician were dated June 2017. (T. 55.)  In response to the ALJ's

questions regarding this visit, Plaintiff testified that she had seen Dr. Bonnabesse a single time

within the last month, after a gap of approximately one year. (*Id*.)  According to Plaintiff, the

physician had referred her for physical therapy, and "put in to have another procedure done."

(*Id*.)  Based on this description of the visit, the ALJ informed Plaintiff that he may decide that

there is sufficient evidence in the record without requesting this single treatment note. (T. 56.)

The ALJ did not request this additional note from Dr. Bonnabesse.  Plaintiff contends that

the ALJ thus failed to fully develop the record.  This Court disagrees.  As the Commissioner

correctly asserts, "[t]he ALJ's duty to develop the record is not infinite, and where, as here,

evidence in hand is consistent and sufficient to determine whether a claimant is disabled, further

development of the record is unnecessary." *Tatelman v. Colvin*, 296 F. Supp.3d 608, 612

(W.D.N.Y. 2017) (citing *Kinslow v. Colvin*, No. 5:12-cv-1541 (GLS/ESH), 2014 WL 788793 at

*4 n.10 (N.D.N.Y. Feb. 25, 2014)) (internal quotation marks omitted).  In this case, the ALJ

made multiple oral and written inquiries to Plaintiff regarding her treatment history, and made

multiple requests to treatment providers, including Dr. Bonnabesse, in order to develop the record. (T. 39-42, 52-57, 263-272, 274-282, 1265-1266.)  The ALJ's disability determination was based upon medical records totaling almost 1000 pages and included an opinion from Dr. Bonnabesse, along with physical and psychiatric consultative examinations.   Based on Plaintiff's hearing testimony, the single missing note from Dr. Bonnabesse did not identify any significant deterioration in Plaintiff's condition or substantial changes in treatment approach that were not otherwise addressed in the record. (T. 55-56.)  Plaintiff has not provided any further details that would suggest this single treatment note could alter the ALJ's decision, and did not provide the document to the Appeals Council or this Court.  *See Curley v. Comm'r of Soc. Sec. Admin.*, 808 F. App'x 41, 44 (2d Cir. 2020) (rejecting argument that the ALJ did not obtain critical physical therapy records, in part, because Plaintiff did not provide them to the district court or describe their contents.)

Accordingly, this Court finds that the ALJ met his heightened obligation to develop the administrative record, and there are no grounds for remand related to this issue.

### 2.  Calling Witnesses

Plaintiff's mother accompanied her to the February 6, 2019 hearing. (T. 48.)  The following exchange occurred at the beginning of the hearing:

> ALJ:   Who is the other individual in the room with you, ma'am?
> CLMT:  My mom.
> ALJ:   Okay.  And what's her name?
> CLMT: [Redacted]
> ALJ:    Okay.  And you want her here for moral support?
> CLMT:  Yes.
> ALJ:     I have no objection to her being in the room if you want her here.  So, we'll allow her to be present during the hearing, although she can't participate. She's here as a – she's here to really watch you and be your moral support.

(T. 48.)

Plaintiff contends that the ALJ erred as a matter of law when he stated that her mother could not participate in the hearing, and should have advised her of the right to call her mother as a witness. (Dkt. No. 16, at 24.)  She asserts that these actions contributed to an adversarial and prejudicial hearing environment. (*Id*.)

Plaintiff has not alleged any of the unique burdens found in *Lopez*, *Collins*, or similar cases where witness testimony was deemed necessary to a full and fair hearing.  Plaintiff is a high school graduate with no significant language or learning difficulties. (T. 59-60.)  The hearing transcripts document Plaintiff's recitation of her own symptoms and treatment history.  Perhaps more significantly, Plaintiff has not demonstrated any prejudice resulting from the ALJ's decision to bar the third-party testimony.  Plaintiff never actually requested that her mother testify at the hearing and has not demonstrated that such testimony would not have been cumulative of the two third-party functional reports that her mother submitted for the record. (T. 48, 203-210, 248-260.)  The ALJ expressly considered both reports as part of the disability determination and explained why he found them to be "not entirely consistent with the medical evidence and other evidence in the record." (T. 16.)

Accordingly, there are no grounds for remand based upon the ALJ's decision that Plaintiff's mother could attend the hearing as moral support, but could not testify or otherwise participate.

### 3.       Right to Counsel

Prior to her October 29, 2018 hearing, the Commissioner advised Plaintiff in writing of her right to an attorney or other representative. (T. 139-140.) The same notice was provided prior to her February 6, 2019 hearing. (T. 156-157.)  At her first hearing, the ALJ verbally reminded

Plaintiff of her right to representation and summarized the type of assistance such a representative could provide, including gathering evidence and questioning witnesses such as the VE.  (T. 37-38.)  He also explained that an attorney may be able to represent Plaintiff on a contingent fee basis, or Plaintiff may qualify for no-cost legal services. (*Id*.)  The ALJ offered to postpone the hearing to a later date if Plaintiff wished to pursue potential representation, and asked Plaintiff to sign a written acknowledgment "that the next time we're scheduled, you'll be prepared to go forward with the hearing on the merits [whether] or not you get counsel."  (T. 38.)  The ALJ also explained that it would be at least 75 days before her rescheduled hearing took place. (*Id*.)  When Plaintiff suggested that she would like her rescheduled hearing to occur earlier, the ALJ advised that she contact attorneys as soon as possible, so that her legal counsel could waive the requisite notice period and still have enough time to prepare for the hearing. (T. 43.)

Plaintiff signed an acknowledgment form that stated in part

I have been advised, both orally and in writing, that if I do not have a representative by the next scheduled hearing, I must be prepared to proceed with the hearing without a representative and, absent extraordinary circumstances, no further postponement will be granted in order for me to get a representative.

(T. 148.) (emphasis in original).

When Plaintiff returned for her rescheduled hearing on February 6, 2019, she was not represented by counsel. (T. 48.)  The following exchange occurred:

ALJ:   Now, ma'am, when you were before me in October, you - - we agreed that you would be prepared to go forward on the merits the next time we scheduled whether you got counsel or not.  And we gave you more than 75-day[s] notice.  I assume you're ready to go ahead with the hearing on the merits today?

CLMT:   Yes, sir.

14

Plaintiff's brief asserts that "[i]t appears she did not understand her right to counsel or the benefit of having representation. (Dkt. No. 16 at 23.) She offers no support for this assertion beyond a reference to Plaintiff's below average intellectual functioning and diagnoses of depressive disorder, anxiety, and substance abuse disorders. (T. 23.) There is no indication in the record that Plaintiff failed to understand her right to representation, that Plaintiff was coerced into signing the acknowledgment at her first hearing and proceeding without representation at her second hearing, or that Plaintiff intended to request a second adjournment that would further delay a determination on her application. Indeed, Plaintiff expressed a desire to avoid further delays in resolving her claim. (T. 43.) This Court is therefore satisfied that there are no grounds for remand due to Plaintiff's decision to represent herself at her administrative hearing.

## VII.   **LISTING 1.04(A)**

### A.  Legal Standards

"The Listing of Impairments describes, for each of the major body systems, impairments which are considered severe enough to prevent a person from doing any gainful activity." 20 C.F.R. § 416.925(a). If a claimant's impairment or combination of impairments meets or equals a listed impairment, the evaluation process is concluded and the claimant is considered disabled without considering the claimant's age, education, or work experience. 20 C.F.R. § 416.920(a)(4)(iii).

At step three of the disability analysis, the ALJ must determine if plaintiff suffers from a listed impairment. *See* 20 C.F.R. §§ 404.1520, 416.920. It is the plaintiff's burden to establish that his or her medical condition or conditions meet all of the specific medical criteria of particular listed impairments. *Gabriel C. v. Comm'r of Soc. Sec.*, No. 6:18-CV-671 (ATB), 2019 WL 4466983, at *4 (N.D.N.Y. Sept. 18, 2019) (citing *inter alia Sullivan v. Zebley*, 493 U.S. 521,

530 (1990)).  "Nonetheless, the ALJ is required to explain why a claimant failed to meet or equal the listings [w]here the claimant's symptoms as described by the medical evidence appear to match those described in the Listings." *Ramirez Morales v. Berryhill*, No. 6:17-CV-06836, 2019 WL 1076088, at *3 (W.D.N.Y. Mar. 7, 2019) (quoting *Rockwood v. Astrue*, 614 F. Supp. 2d 252, 273 (N.D.N.Y. 2009) (citation and internal quotations omitted)).  If a plaintiff's impairment "manifests only some of those criteria, no matter how severely," such impairment does not qualify.  *Debra E. v. Comm'r of Soc. Sec.*, No. 6:18-CV-513 (NAM), 2019 WL 4233162, at *6 (N.D.N.Y. Sept. 6, 2019) (quoting *Sullivan*, 493 U.S. at 530.).  In order to demonstrate medical equivalence, a plaintiff "must present medical findings equal in severity to all the criteria for the one most similar listed impairment." *Sullivan*, 493 U.S. at 531.

An ALJ is not required, in every instance, to provide an express explanation for his conclusion that a claimant's impairments fail to meet or equal the requirements of a Listing.  *See Ryan v. Astrue*, 5 F. Supp. 3d 493, 507 (S.D.N.Y. 2014) (citing *Berry v. Schweiker*, 675 F.2d 464, 469 (2d Cir. 1982)).  "[W]here the evidence on the issue of whether a claimant meets or equals the listing requirements is equipoise and 'credibility determinations and inference drawing is required of the ALJ' to form his conclusion at step 3, the ALJ must explain his reasoning." *Id*. (quoting *Berry*, 675 F.2d at 469).  Although "an ALJ 'should set forth a sufficient rationale in support of his decision to find or not to find a listed impairment,' the absence of an express rationale for an ALJ's conclusions does not prevent [the court] from upholding them so long as [the court] is 'able to look to other portions of the ALJ's decision and to clearly credible evidence in finding that his determination was supported by substantial evidence.'" *Salmini v. Comm'r of Soc. Sec.*, 371 F. App'x 109, 112 (2d Cir. 2010) (quoting *Berry*, 675 F.2d at 469).

16

### B. Application

Under Listing 1.04(A), an individual is presumptively disabled if he or she suffers from "herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, or vertebral fracture[ ], resulting in compromise of a nerve root ... or spinal cord" with "[e]vidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04(A).

Plaintiff contends that she meets or equals Listing 1.04 because she has a spinal disorder with evidence of nerve root compression along with neuraoanatomical distribution of pain, limited range of motion in her spine, leg numbness and multiple positive straight leg raise test results. (Dkt. No. 16, at 19-20.)  Defendant argues that Plaintiff has not shown any evidence of motor loss (either atrophy or muscle weakness), or any equivalent medical findings and therefore fails to satisfy all the criteria of Listing 1.04. (Dkt. No. 19, at 13-15.)

As noted above, the burden is on Plaintiff to show that all of the requirements are met before she can satisfy a Listing.  *Otts v. Comm'r of Soc. Sec*., 249 F. App'x 887, 889 (2d Cir. 2007).  Here, Plaintiff has not shown that there is medical evidence of "motor loss accompanied by sensory or reflex loss," as required by Listing 1.04(A).  Indeed, the record shows repeated observation of full motor strength in Plaintiff's upper and lower extremities.  (T. 799, 1207, 1209, 1256.)  Despite Plaintiff's cite to a single example of leg numbness, the record also shows generally normal sensation and reflexes.  (T. 770, 1177, 1207, 1209, 1238, 1256, 1285.)

17

In light of this evidence, the Court finds that the ALJ could reasonably conclude that Plaintiff did not meet the criteria of Listing 1.04(A), and that Plaintiff had not shown an impairment "equal in severity and duration to the criteria of" Listing 1.04(A).  Moreover, the Court finds no evidence, nor does Plaintiff argue, that her condition met the requirements of Listings 1.04(B) or 1.04(C).[2]

Accordingly, Plaintiff has failed to show that the ALJ erred in concluding that Plaintiff did not meet or equal the impairment criteria for Listing 1.04.  *Otts,* 249 F. App'x at 889 (noting that it was the plaintiff's "burden to demonstrate that her disability met all of the specified medical criteria of a spinal disorder" and upholding the ALJ's decision that the plaintiff's impairments did not meet or equal Listing 1.04(A) because there was no evidence of motor loss accompanied by sensory or reflex loss or of nerve root compression); *Debra A. v. Comm'r of Soc. Sec.*, No. 6:18-CV-513 (NAM), 2019 WL 4233162, at *7 (N.D.N.Y. September 6, 2019) (affirming ALJ's finding that plaintiff did not satisfy Listing 1.04 where there was no medical evidence of motor loss accompanied by sensory or reflex loss); *Conetta v. Berryhill*, 365 F. Supp. 3d 383, 396–98 (S.D.N.Y. 2019) (finding that Plaintiff failed to show she met Listing 1.04 where there was insufficient medical evidence to show that she met all of the criteria); *Kelsey v. Comm'r of Soc. Sec.*, 335 F. Supp. 3d 437, 444 (W.D.N.Y. 2018) (affirming the ALJ's finding that Listing 1.04 criteria were not met because "Plaintiff's motor strength was consistently normal with no evidence of atrophy, as were her sensation and deep-tendon reflexes"); *see also White v. Berryhill*, 753 F. App'x 80, 81 (2d Cir. 2019) (rejecting claimant's argument that he

---

[2] Listings 1.04(B) or 1.04(C) require clinical findings showing evidence of spinal arachnoiditis, lumbar spinal stenosis resulting in pseudoclaudication, or an inability to ambulate. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04(B),(C).

equaled the requirements of Listing 1.04, where the record consistently showed normal balance, strength, and reflexes).

## VIII.   **RFC AND MEDICAL OPINION EVIDENCE**

### A.   **Legal Standards**

#### 1.   **RFC**

RFC is "what [the] individual can still do despite his or her limitations.  Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis. . . ."  A "regular and continuing basis" means eight hours a day, for five days a week, or an equivalent work schedule.  *Balles v. Astrue*, No. 3:11-CV-1386 (MAD), 2013 WL 252970, at *2 (N.D.N.Y. Jan. 23, 2013) (citing *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (quoting SSR 96–8p, 1996 WL 374184, at *2)); *Babcock v. Berryhill,* No. 5:17-CV-00580 (BKS), 2018 WL 4347795, at *12-13 (N.D.N.Y. Sept. 12, 2018); *Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 33 (2d Cir. 2013); *Stephens v. Colvin*, 200 F. Supp. 3d 349, 361 (N.D.N.Y. 2016).

In rendering an RFC determination, the ALJ must consider objective medical facts, diagnoses, and medical opinions based on such facts, as well as a plaintiff's subjective symptoms, including pain and descriptions of other limitations.  20 C.F.R. §§ 404.1545, 416.945.  *See Martone v. Apfel*, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999) (citing *LaPorta v. Bowen*, 737 F. Supp. 180, 183 (N.D.N.Y. 1990)); *Kirah D. v. Berryhill*, No. 3:18-CV-0110 (CFH), 2019 WL 587459, at *8 (N.D.N.Y. Feb 13, 2019); *Genier v. Astrue,* 606 F.3d 46, 49 (2d Cir. 2010).  An ALJ must specify the functions a plaintiff is capable of performing, and may not simply make conclusory statements regarding a plaintiff's capacities.  *Roat v. Barnhart,* 717 F. Supp. 2d 241, 267 (N.D.N.Y. 2010); *Martone*, 70 F. Supp. 2d at 150 (citing *Ferraris v. Heckler*, 728 F.2d 582,

19

588 (2d Cir. 1984)); *LaPorta*, 737 F. Supp. at 183; *Stephens v. Colvin,* 200 F. Supp. 3d 349, 361

(N.D.N.Y. 2016); *Whittaker v. Comm'r of Soc. Sec.*, 307 F. Supp. 2d 430, 440 (N.D.N.Y. 2004).

The RFC assessment must also include a narrative discussion, describing how the evidence

supports the ALJ's conclusions, citing specific medical facts, and non-medical evidence.

*Natashia R. v. Berryhill*, No. 3:17-CV-01266 (TWD), 2019 WL 1260049, at *11 (N.D.N.Y. Mar.

19, 2019) (citing SSR 96-8p, 1996 WL 374184, at *7).

### 2.    Evaluating Medical Evidence

Pursuant to the "treating physician rule"[3] set out in 20 C.F.R. § 416.927(c), "the opinion

of a claimant's treating physician as to the nature and severity of the impairment is given

'controlling weight' so long as it is 'well-supported by medically acceptable clinical and laboratory

diagnostic techniques and is not inconsistent with the other substantial evidence in the case

record.'" *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015) (quoting *Burgess v. Astrue*, 537 F.3d

117, 128 (2d Cir. 2008)).    However, "the opinion of the treating physician is not afforded

controlling weight where ... the treating physician issued opinions that are not consistent with other

substantial evidence in the record, such as the opinions of other medical experts."    *Halloran v.

Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004).

In deciding how much weight to afford the opinion of a treating physician, the ALJ must

"'explicitly consider, inter alia: (1) the frequency, length, nature, and extent of treatment; (2) the

amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the

---

[3] For claims filed on or after March 27, 2017, a new set of regulations apply. These new regulations do "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)." 20 C.F.R. § 416.920c(a).  Because Plaintiff's SSI application was filed prior to March 27, 2017, the treating physician rule applies.

remaining medical evidence; and (4) whether the physician is a specialist.'"  *Greek*, 802 F.3d at

375 (quoting *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013)).   However, where the ALJ's

reasoning and adherence to the regulation is clear, and it is obvious that the "substance of the

treating physician rule was not traversed," no "slavish recitation of each and every factor" of 20

C.F.R. § 404.1527 is required.  *Atwater v. Astrue*, 512 F. App'x. 67, 70 (2d Cir. 2013) (citing

*Halloran v. Barnhart*, 362 F.3d at 31-32).  The factors for considering opinions from non-treating

medical sources are the same as those for assessing treating sources, with the consideration of

whether the source examined the claimant replacing the consideration of the treatment relationship

between the source and the claimant.  20 C.F.R. §§ 416.927(c)(1)-(6).

### B.    Application

As an initial matter, "there is no requirement that the ALJ pick one RFC [opinion] and

use that particular evaluation in its entirety."  *Alexandrea R.R. v. Berryhill*, No. 15-CV-756-FPG,

2019 WL 2269854, at *6 (N.D.N.Y. May 28, 2019).  Rather, "it is the ALJ's responsibility to

choose between properly submitted medical opinions and other competent evidence to piece

together an overall [RFC] assessment."  *Id.*  "Although the ALJ's conclusion may not perfectly

correspond with any of the opinions of medical sources cited in his [or her] decision, he or [she]

was entitled to weigh all of the evidence available to make an RFC finding that was consistent

with the record as a whole."  *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (summary

order).   In this case, the ALJ considered multiple medical opinions and treatment notes along

with Plaintiff's testimony in reaching an RFC determination that was supported by substantial

evidence, as set forth below.

1.     **The ALJ's evaluation of Plaintiff's treating sources was supported by substantial evidence.**

In reaching his RFC determination, the ALJ considered the February 11, 2014 treatment notes of Dr. Bonnabesse, who had managed Plaintiff's pain management medication since at least 2010, but was not doing so at the time of his examination. (T. 21, 63, 67-68, 286-287.) Plaintiff had not seen Dr. Bonnabesse since January 2013, but needed a follow-up in connection with her workers' compensation claim. (T. 286-287.)  During the examination, Plaintiff reported a current pain level of 7 out of 10, particularly a dull aching pain in her lower back that radiated down either leg. (T. 286.)  Dr. Bonnabesse recommended a lumbar transforaminal epidural steroid injection to address Plaintiff's back pain.  (*Id*.)  He also fitted Plaintiff for a back brace to provide greater spinal support, and encouraged her to sleep on a more supportive mattress. (*Id*.)

Based on his examination, Dr. Bonnabesse opined that Plaintiff was restricted to lifting no greater than ten pounds, could perform no bending or twisting, could not push or pull items weighing greater than fifteen pounds, and required the ability to shift positions as needed. (T. 287.)  He also noted that Plaintiff had previously been classified as "75% temporary marked partial disability." (*Id*.)

The ALJ assigned Dr. Bonnabesse's overall opinion "partial weight" because he found the reference to 75% disability to be "vague and not persuasive." (T. 21.)  He assigned "some weight" to the remainder of the opinion, because it came from a treating source and was generally consistent with the overall record.  (*Id*.)  In particular, the ALJ's RFC determination that plaintiff could perform sedentary work is consistent with Dr. Bonnabesse's opinion that plaintiff could lift no greater than ten pounds, and had postural limitations due to back pain. (T.14.)

Plaintiff contends that the ALJ should have given "full weight" to Dr. Bonnabesse's opinion, noting in particular its consistency with a July 2016 MRI showing borderline central stenosis, and the treating physician's concerns that additional surgery would exacerbate Plaintiff's impairments by causing more scar tissue. (Dkt. No. 16, at 26.)  Plaintiff's focus on the specifics of the diagnosis and the course of treatment do not suggest that the ALJ lacked substantial evidence for the functional limitations set out in his RFC determination.  *See Prince v. Astrue*, 490 Fed.Appx. 399, 400 (2d Cir. 2013) (a mere diagnosis, without evidence of severity of symptoms and functional limitations, does not mandate a finding of disability); *Payne v. Astrue*, No. 11-CV-322 (RFT), 2013 WL 550677, at *5 (N.D.N.Y. Feb. 12, 2013) ("The mere existence of a diagnosis, however, is insufficient to show that functional limitations are imposed as a result of the impairments.").  Likewise, as Defendant correctly points out, Dr. Bonnabesse's opinion regarding Plaintiff's partial disability status was not binding on the Commissioner.  20 C.F.R. § 416.927(d); *see also Snyder v. Comm'r of Soc. Sec.*, No. 7:14-cv-01292 (MAD), 2016 WL 1060304, at *6 (N.D.N.Y. Mar. 15, 2016) ("opinion that Plaintiff is unable to work is a disability conclusion, not a medical opinion.").

As part of his decision, the ALJ also expressly considered examination notes from two other treating sources, Dr. Jason Arora and Dr. George Disney. (T. 18-20.)  Dr. Arora examined Plaintiff in April 2017 for management of her epidural injections. (T. 1270-1271.)  Although Plaintiff reported a "significant amount of pain relief" following a previous injection, Dr. Aurora decided a second injection was appropriate in light of continuing pain that radiated into her left leg. (*Id*.)  Dr. Disney treated Plaintiff's substance abuse issues and also took over primary management of her pain medication from Dr. Bonnabesse. (T. 65-66, 895-896, 909, 919-920,

926-927, 1293-1294.)  His treatment notes include numerous references to Plaintiff's back pain, describing it as "quite painful at times." (T. 1281.)

Plaintiff contends that the ALJ erred by not addressing what weight, if any, he assigned to "the findings and opinions" of Dr. Arora and Dr. Disney. (Dkt. No. 16 at 27.)  In raising this argument, Plaintiff cites the diagnoses and accompanying descriptions of Plaintiff's symptoms from the examination notes of these treatment sources but does not identify any functional limitations identified by Dr. Arora or Dr. Disney.  As such, the ALJ did not err by declining to assign a weight to the "bare medical findings" in the examination notes.  *See Murray v. Comm'r of Soc. Sec.*, No. 18-CV-326P, 2019 WL 4263336, at *3 (W.D.N.Y. Sept. 10, 2019) (remanding where ALJ relied upon treatment notes containing "bare medical findings" that did not address how claimant's impairments "affect[ed] her physical ability to perform work-related functions" as a substitute for medical opinion evidence).

Finally, Plaintiff contends that the ALJ should have recontacted Dr. Bonnabesse, Dr. Arora, and Dr. Disney to "obtain further evidence regarding her physical and mental impairments and concomitant limitations." (Dkt. No. 16, at 27.).  Beyond the single visit to Dr. Bonnabesse, Plaintiff has not identified any additional record evidence from these physicians that would potentially shed new light not already provided by the objective and opinion evidence in the record.  "[W]here there are no obvious gaps ... and where the ALJ already possesses a 'complete medical history,'" the ALJ is under no obligation to seek additional information.  *Rosa v. Callahan*, 168 F.3d 72, 79, n.5 (2d Cir. 1999).

### 2.     The ALJ's evaluation of Dr. Wassef's consultative opinion was supported by substantial evidence.

On January 12, 2017, Dr. Nader Wassef performed a consultative physical examination

of Plaintiff.  (T. 1253-1260.)  Prior to the examination, Dr. Wassef noted that Plaintiff appeared

to be in discomfort from pain in her lower back, and that Plaintiff preferred to stand due to

difficulty sitting down. (T. 1253.)

Dr. Wassef observed that Plaintiff walked with a slight limp, with "evidence of pelvic tilt

with the right anterior superior iliac spine an inch higher than the left anterior superior iliac

spine." (T. 1255.)  She required no assistive devices, and was able to change for the examination,

get on and off the examination table, and rise from a chair without difficulty. (*Id*.)  Plaintiff was

in discomfort during range of motion exercises but her cervical spine showed full flexion,

extension, lateral flexion bilaterally, and full rotary movement bilaterally. (T. 1255-1256.)  Her

lumbar spine showed reduced flexion/extension of 45 degrees, lateral flexion right and left 20

degrees, and rotary movements right and left 20 degrees, with diffuse tenderness in the lumbar

spine area. (T. 1256.)  Plaintiff showed full range of motion in the shoulders, elbows, forearms

and wrists bilaterally, as well as in the hips, knees, and ankles bilaterally. (*Id*.)  She demonstrated

full strength in the upper and lower extremities, intact hand and finger dexterity, and full grip

strength bilaterally. (*Id*.)

Dr. Wassef's examination notes contain some inconsistencies.  He reported that Plaintiff

has a positive straight left leg raise test at 60 degrees, but also stated that her straight leg raise

was negative bilaterally. (*Id*.)  Similarly, Dr. Wassef reported that Plaintiff was unable to stand

and walk on heels and toes, and was unable to squat. (T. 1255.)  In the next sentence, he reported

that Plaintiff could walk on heels and toes without difficulty and could perform a full squat. (*Id*.)

Based on his examination, Dr. Wassef opined that Plaintiff had "moderate limitations in

regard to standing, walking, climbing and descending stairs, bending, squatting, lifting, sitting,

and operating foot controls." (T. 1256-1257.)  He further opined that Plaintiff should not be

exposed to extremes in temperature, secondhand smoke, perfumes, chemicals, or any type of respiratory irritants. (*Id.*)  The ALJ assigned "some weight" to Dr. Wassef's opinion, discounting it due to the inconsistencies in the description of Plaintiff's ability to walk or stand on heels and toes, squat, and the unclear results of her straight leg raise test. (T. 22.)

Plaintiff contends that the ALJ erred by failing to re-contact Dr. Wassef to clarify the inconsistent results of his examination. (Dkt. No. 16, at 25-26.)  This court disagrees.  This case is not one of the rare situations where an ALJ is required to re-contact a consultative examiner to clarify his opinion.  *See Reithel v. Comm'r of Soc*. Sec., 330 F. Supp. 3d 904, 912 (W.D.N.Y. 2018) ("[T]he [ALJ] need only re-contact sources or obtain additional information where there is a conflict or ambiguity that must be resolved but that cannot be resolved based on the evidence present in the record."); *Gregorio C. v. Comm'r of Soc. Sec.*, No. 1:19-CV-1027 (EAW), 2021 WL 262286, at *4-5 (W.D.N.Y. January 27, 2021) (finding that ALJ should have re-contacted consultative examiner to clarify incomplete opinion where there was no other medical opinion evidence with regard to functional limitations).  Here, the ALJ had detailed treatment notes addressing Plaintiff's physical impairments, including multiple straight leg raise tests, as well as the opinions of treating physician Dr. Bonnabesse and non-examining consultant Dr. A. Vinluan.[4] (T. 97-99, 286-287, 799, 874, 1209.)  In addition, there is no evidence that the inconsistencies in the narrative report impacted Dr. Wassef's ultimate opinion that plaintiff had only moderate physical limitations.

---

[4] The ALJ assigned "some weight" to Dr. Vinluan's opinion in light of its consistency with the overall record, but discounted it because it was solely based on a review of Plaintiff's medical records. (T. 22-23.)

Moreover, the ALJ's RFC determination that Plaintiff could perform sedentary work, based on the total record, was more restrictive than Dr. Wassef's opinion, which was more consistent with an ability to  perform light work.  *See White v. Berryhill*, No. 18-CV-1481, 753 F. App'x 80, (2d Cir. 2019) (holding that ALJ properly inferred that claimant was able to perform light work on full-time sustained basis, where consultative examiner opined that applicant had moderate limitations in standing, sitting, and performing other activities); *Raymonda C. v. Comm'r of Soc. Sec.*, No. 3:19-CV-0178, 2020 WL 42814, at *4 (N.D.N.Y. Jan. 3, 2020) ("[C]ourts have consistently found that a 'moderate' limitation in [standing, walking, lifting, and carrying] is essentially equivalent to an ability to perform light work.") (collecting cases); *Gurney v. Colvin,* No. 14-CV-688S, 2016 WL 805405 at *3 (W.D.N.Y. 2016) (collecting cases holding that RFC for light work sufficiently accounts for moderate postural limitations such as lifting, bending, reaching, pushing, pulling and/or carrying).  Therefore, any error in the ALJ's failure to re-contact Dr. Wassef to clarify his findings was harmless.

Dr. Brett Hartman performed a consultative psychiatric examination of Plaintiff on January 12, 2017. (T. 1248-1252.)  Prior to the examination, Plaintiff reported difficulty falling asleep due to pain and racing thoughts. (T. 1249.)  She also reported that she felt overwhelmed easily and experienced concentration problems and mild short-term memory loss. (*Id*.)

During the examination, Plaintiff demonstrated coherent and goal-directed thought processes, with an anxious and dysphoric mood. (T. 1250.)  Her attention and concentration appeared mildly impaired. (*Id*.)  She could perform counting exercises without difficulty, but she was slow with calculations and serial 3s. (*Id*.)  Her recent and remote memory skills appeared to be generally intact, but her intellectual functioning appeared to be significantly below average with a borderline general fund of information. (T. 1251.)

Based on his examination, Dr. Hartman opined that Plaintiff was able to follow and understand simple directions and perform simple tasks. (*Id*.)  He further opined that Plaintiff had a "fair ability" to maintain a regular schedule, learn new tasks, and make appropriate decisions. (*Id*.)  He also opined that Plaintiff had mild difficulty maintaining attention and concentration, perform complex tasks independently, and mild to moderate difficulty relating adequately with others and moderate problems dealing with the normal stressors of life. (T. 1251-1252.)

The ALJ assigned great weight to Dr. Hartman's opinion in light of his examination of Plaintiff, his program experience, and the opinion's consistency with the overall record. (T. 22.) He incorporated the consultative examiner's findings into the RFC determination by limiting Plaintiff to work consisting of unskilled tasks that required little or no judgment to do simple duties that can be learned on the job in a short period of time. (T. 14.)

Plaintiff contends that the RFC determination should have included greater mental limitations regarding time off-task, in light of Dr. Hartman's opinion that Plaintiff had a fair ability to maintain a regular schedule. (Dkt. No. 16, at 31.)  However, there is no indication that Dr. Hartman intended to suggest any significant limitations in this area.  *See Filichko v. Colvin*, No. 15-CV-525, 2016 WL 3166899, at *7 (S.D.N.Y. Apr. 27, 2016) (plaintiff's "fair" ability to sustain an ordinary routine, among other mental abilities, suggested no more than a mild impairment); *Jesse S. Comm'r of Soc. Sec.*, No. 8:19-CV-1074 (ATB), 2020 WL 3470492, at *12 (N.D.N.Y. June 25, 2020) (rejecting plaintiff's argument that "fair" ability to sustain an ordinary routine was equivalent to marked limitations in performing a normal workday and performing at a consistent pace.).  Therefore, the ALJ's interpretation of Dr. Hartman's opinion was reasonable, particularly in light of Plaintiff's documented ability to regularly attend outpatient drug treatment and counseling sessions for a number of years. (T. 23, 318, 321.)

28

### 3. The ALJ's evaluation of Plaintiff's testimony was supported by substantial evidence.

At her February 6, 2019 hearing, Plaintiff testified that her primary impairment was back pain that radiated into her left leg and made it difficult to stand for long periods. (T. 62, 77-78.) She described the pain as continuous, forcing her to shift positions regularly, with the most comfortable position being lying on her side. (T. 77-78.)  She testified that she had regularly sought treatment for her back, but that Dr. Bonnabesse had told her that "he doesn't know what else to do for me," resulting in gaps in her treatment due to a lack of viable treatment options. (T. 80.)

With regard to daily activities, Plaintiff testified that her oldest child attended pre-kindergarten during the day,[5] but she cared for her youngest child by herself during the daytime. (T. 80.)  At night, Plaintiff's father typically came over to assist with childcare and household tasks such as laundry. (T. 78-79.)

The ALJ gave several reasons for discounting Plaintiff's subjective description of her functional limitations. (T. 23.)  First, he noted that Plaintiff's activities of daily living, including care of a one-year old child and regular attendance at outpatient drug treatment and counseling sessions, were inconsistent with the debilitating back pain that she described.  (T. 23, 80, 318, 321, 1250.)  The ALJ also noted that Plaintiff had several gaps of a year or more between treatment appointments for her back pain. (T. 286, 874.)  He also cited 2017 treatment notes reflecting Plaintiff's statements that her sciatica "had been better for a long time with little or no discomfort" until a recent flare-up, and that "[h]er back does not bother her every day." (T. 1280-1281.)  The ALJ also factored in the sporadic work history that predated Plaintiff's alleged onset

---

[5] Plaintiff had assistance transporting her child to and from school. (T. 80.)

date.  (T. 23, 211, 240.)  All of these factors, when taken together, were valid considerations that are supported by the record.  *See Schaal v. Apfel*, 134 F.3d 496, 503 (2d Cir. 1998) (ALJ may consider plaintiff's limited work history as one factor in assessing her testimony regarding her symptoms); *Tasha W. v. Comm'r of Soc. Sec.*, No. 3:20-CV-731, 2021 WL 2952867 (N.D.N.Y. July 14, 2021) (ALJ may properly consider a plaintiff's daily activities, including childcare, as part of the RFC analysis) (collecting cases); *Smith v. Berryhill*, No. 17-CV-6465L, 2018 WL 5266794, at *2 (W.D.N.Y. Oct. 23, 2018) (ALJ may consider plaintiff's inconsistent  treatment history as one factor to support his findings).

## IX.   <u>STEP FIVE DETERMINATION</u>

Plaintiff has not raised any specific challenge to the ALJ's step five determination, so this Court will only briefly address this issue.  At step five, the burden shifts to the Commissioner "to show there is other work that [the claimant] can perform."  *McIntyre*, 758 F.3d at 150 (quoting *Brault v. Soc. Sec. Admin.*, 683 F.3d 443, 445 (2d Cir. 2012)).  "If a claimant has non-exertional limitations that 'significantly limit the range of work permitted by his exertional limitations,' the ALJ is required to consult with a vocational expert."  *Zabala v. Astrue*, 595 F.3d 402, 410 (2d Cir. 2010) (quoting *Bapp v. Bowen*, 802 F.2d 601, 605 (2d Cir. 1986)).

If the ALJ utilizes a VE at the hearing, the VE is generally questioned using a hypothetical question incorporating Plaintiff's limitations.  *See Aubeuf v. Schweiker*, 649 F.2d 107, 114 (2d Cir. 1981).  The ALJ may rely on a VE's testimony regarding the availability of work as long as the hypothetical facts the expert is asked to consider are based on substantial evidence and accurately reflect the Plaintiff's limitations.  *Calabrese v. Astrue*, 358 F. App'x 274, 276 (2d Cir. 2009).  Where the hypothetical is based on an ALJ's RFC analysis which is supported by substantial facts, the hypothetical is proper.  *Id.* at 276-77.

VE Heck testified at the hearing.  (T. 82-87.)  Because this Court has found the ALJ's RFC determination was supported by substantial evidence, it also finds his hypothetical to VE Heck based upon that RFC was proper, and thus the ALJ's step five determination was supported by substantial evidence. (T. 23-24, 84-86.)  Based on the foregoing, the ALJ's decision was based upon correct legal standards, and substantial evidence supports his determination that Plaintiff was not under a disability at any time between the application date and the date of the ALJ's decision.

**ACCORDINGLY**, it is hereby

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 16) is **DENIED**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 19) is **GRANTED**; and it is further

**ORDERED** that Defendant's decision denying Plaintiff disability benefits is **AFFIRMED**, and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED**.


Dated: August 2, 2021
        Binghamton, New York

Miroslav Lovric
U.S. Magistrate Judge